UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| ARTHUR ELLIOTT, | Civil Action No. 15-6906 (SDW) |
| Petitioner, | |
| v. | OPINION |
| LORETTA LYNCH, et al., | |
| Respondents | |

**WIGENTON**, District Judge:

Presently before the Court is the petition for a writ of habeas corpus of Petitioner, Arthur Elliott, pursuant to 28 U.S.C. § 2241. (ECF No. 1). The Government has filed a response to the petition (ECF No. 5), to which Petitioner has replied (ECF No. 7). For the reasons set forth below, this Court will deny the petition without prejudice.

**I. BACKGROUND**

Petitioner, Arthur Elliott, is a native and citizen of Sierra Leone. (Document 1 attached to ECF No. 5 at ¶ 5). Petitioner entered this country in 2000 as a refugee, and became a lawful permanent resident in October 2004. (*Id.*). On April 12, 2013, Petitioner was convicted of a firearms offense in the Superior Court of New Jersey and was sentenced to seven years imprisonment. (*Id.*).

On June 18, 2013, immigration officials issued a notice to appear charging Petitioner with removability on the basis of his 2013 conviction. (*Id.* at ¶ 6). On August 12, 2014, Petitioner was taken into custody by immigration officials following Petitioner's release from state custody. (*Id.*). Petitioner entered removal proceedings, and was ultimately ordered removed by an immigration

1

judge on February 17, 2015.  (*Id.*).  Petitioner did not appeal that ruling, and his order of removal therefore became final on or about February 17, 2015.  (*Id.*).

On or about February 25, 2015, immigration officials first requested that the Embassy of Sierra Leone issue a travel document for Petitioner so that he could be removed.  (*Id.* at ¶ 7). Petitioner was thereafter taken to York, Pennsylvania, where he was interviewed by an official from the Embassy.  (*Id.*)  Petitioner asserts in his reply that, during that interview, he told the Embassy that he had neither a birth certificate nor passport from Sierra Leone.  (ECF No. 7 at 12). Petitioner further asserts that he called the Embassy and was "told by the representative that due to the complications with his birth certificate and passport, his removal to Sierra Leone is unlikely in the near/foreseeable future."  (*Id.*).

On June 18, 2015, however, immigration officials contacted the Embassy again, at which point the Sierra Leone Embassy confirmed that Petitioner was from Sierra Leone, but that no travel documents could be issued "until after the Ebola crisis in Sierra Leone has ended."  (Document 1 attached to ECF No. 5 at ¶ 8).  Immigration kept in contact with the Embassy, and was told on October 8, 2015, that Sierra Leone was confident an end to the Ebola crises was coming within thirty days, and that the Embassy would thereafter issue travel documents for those whose identity had previously been confirmed, including Petitioner.  (*Id.* at ¶ 9).  On November 6, 2015, immigration officials again met with representatives from the embassy and were informed that the World Health Organization (WHO) had declared that Sierra Leone was Ebola free, and that the Ambassador and his staff were working on a repatriation plan to issue travel documents for individuals awaiting removal whose identity had previously been confirmed but who had not been removed because of the Ebola crisis.  (*Id.* at ¶ 10).  The WHO officially declared the end of the Ebola outbreak the following day.  (*Id.* at ¶ 11).  As the Ebola crisis has ended, and the Embassy

has confirmed that it intends to start issuing travel documents to those individuals whose identities have been confirmed as a result, immigration officials expect that a travel document will be issued for Petitioner in the near future as immigration has a history of regularly removing individuals to Sierra Leone that was only interrupted during the Ebola outbreak.  (*Id.* at ¶ 12).

## II. DISCUSSION

### A. Legal Standard

Under 28 U.S.C. § 2241(c), habeas relief may be extended to a prisoner only when he "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3).  A federal court has jurisdiction over such a petition if the petitioner is "in custody" and the custody is allegedly "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3); *Maleng v. Cook*, 490 U.S. 488, 490 (1989).  As Petitioner is currently detained within this Court's jurisdiction, by a custodian within the Court's jurisdiction, and asserts that his continued detention violates due process, this Court has jurisdiction over his claims.  *Spencer v. Lemna*, 523 U.S. 1, 7 (1998); *Braden v. 30th Judicial Circuit Court*, 410 U.S. 484, 494-95, 500 (1973); *see also Zadvydas v. Davis*, 533 U.S. 678, 699 (2001).

### B. Analysis

Although Petitioner argues at length that his current detention is unreasonable under *Diop v. ICE/Homeland Sec.*, 656 F.3d 221, 231-35 (3d Cir. 2011), and *Chavez-Alvarez v. Warden York County Prison*, 783 F.3d 469 (3d Cir. 2015), those cases both deal with detention during the period of time where a final order of removal has not been issued, and the petitioner is subject to detention under 8 U.S.C. § 1226(c).  Here, however, Petitioner did not appeal his order of removal, and thus

he is subject to a final order of removal and is currently detained pursuant to 8 U.S.C. § 1231(a). *See, e.g., Leslie v. Attorney Gen.*, 678 F.3d 265, 268-70 (3d Cir. 2012).

As Petitioner is currently confined pursuant to 8 U.S.C. § 1231(a), the reasonableness of the length of his detention is controlled by the Supreme Court's ruling in *Zadvydas*, 533 U.S. at 701. In *Zadvydas*, the Court observed that the statute requires the Government to detain an alien throughout the ninety-day removal period following the issuance of a final order of removal. *Id.* at 683. The Court also held in that case that removable aliens may be detained beyond the statutory removal period so long as the alien's continued detention is "reasonably necessary" to effectuate the alien's removal. *Id.* at 689, 699. The *Zadvydas* Court further held that detention for a period of up to six months is presumptively reasonable under § 1231(a). *Id.* at 701. It is only after that six month period has passed that an alien may challenge his continued detention under *Zadvyas* by showing that there is "no significant likelihood of removal in the reasonably foreseeable future." *Id.* Thus, to be entitled to habeas relief, Petitioner must "'provide[] good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future,' after which the Government 'must respond with evidence sufficient to rebut that showing.'" *Alexander v. Att'y Gen.*, 495 F. App'x 274, 276 (3d Cir 2012) (quoting *Zadvydas*, 533 U.S. at 701). "*Zadvydas* does not delineate the boundaries of evidentiary sufficiency, but it suggests that an inversely proportional relationship is at play: the longer an alien is detained, the less he must put forward to obtain relief." *Id.* at 276-77.

Here, Petitioner received his final order of removal in February of 2015, and has therefore been detained under § 1231(a) for approximately one year, well in excess of the six month presumptively reasonable period. In support of his assertion that his removal is not reasonably likely, Petitioner provides only his own unsupported assertion that an unknown representative of

4

the Embassy of Sierra Leone told him that his lack of a birth certificate or passport made his removal "unlikely in the near/foreseeable future" and Petitioner's own assertion that his family and the Sierra Leone consulate have continued to tell him that. (ECF No. 1 at 4-5; ECF No. 7 at 12-13). Petitioner provides no documentary evidence in support of this claim, nor has he provided a sworn statement or affidavit setting forth his factual contentions.

The Government, however, has provided a certification by an immigration official with personal knowledge who affirms that immigration officials have spoken with the Embassy, that the Embassy has confirmed that Petitioner is from Sierra Leone, that Petitioner's removal was only delayed by the fact that Sierra Leone was effectively quarantined during the Ebola outbreak and would not issue documents until the outbreak ended in November 2015, that the Embassy has since stated that they are beginning to clear the backlog of confirmed aliens in need of travel documents now that the Ebola crisis has ended, and that Petitioner is among those in that backlog for whom the Embassy is preparing documents. (Document 1 attached to ECF No. 5). Thus, the information provided by the Government clearly indicates that, now that the Ebola crisis no longer prevents the issuance of travel documents, there is every expectation that Sierra Leone will shortly issue travel documents for Petitioner and that Petitioner will shortly thereafter be removed to his native land. Even if this Court credits Petitioner's assertion that Sierra Leone at first was hesitant to issue a document due to his lack of documentation of his birth, that the Embassy has confirmed his identity and is in the process of providing documents for aliens awaiting removal clearly contradicts his assertion that his removal is unlikely in the reasonably foreseeable future. As such, Petitioner has failed to show that his removal is not reasonably foreseeable, and to the extent that he has attempted to do so, the Government has clearly rebutted his arguments with evidence indicating that Petitioner's removal is quite likely in the near future. Petitioner has therefore failed

5

to show that his circumstances warrant habeas relief, and his Petition will therefore be denied without prejudice.  *See Zadvydas*, 533 U.S. at 701; *Alexander*, 495 F. App'x at 276-77.

### III. CONCLUSION

For the reasons stated above, this Court will deny Petitioner's petition for a writ of habeas corpus (ECF No. 1) without prejudice.  An appropriate order follows.

February 17, 2016                                        *s/ Susan D. Wigenton*
                                                                    Hon. Susan D. Wigenton
                                                                    United States District Judge